UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
AMERICAN CIVIL LIBERTIES UNION    )
FOUNDATION, INC.,                               )
AMERICAN CIVIL LIBERTIES UNION    )
AND                                                      )
NATIONAL CONSUMER LAW CENTER )
                                                    )
        Plaintiffs,                                   )
                                                    )
        v.                                             )          Civil Action No.:  16-10613-ADB
                                                    )
                                                    )          ORAL ARGUMENT REQUESTED
UNITED STATES DEPARTMENT OF        )
EDUCATION                                         )
                                                    )
        Defendant.                                 )
_____)


**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Leave to File Granted October 4, 2016)** *

_____

* Leave of court granted on October 4, 2016 for Plaintiffs to file an opening summary judgment brief of up to thirty pages, on a timeline later amended. ECF Nos. 35, 36.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................................... iii

INTRODUCTION ............................................................................................................................... 1

STATEMENT OF FACTS .................................................................................................................. 2

    I.    Federal Student Debt, ED, and the PCAs ............................................................................ 2

    II.    ED's Oversight of the PCAs ............................................................................................... 4

    III.    Disproportionate Impact of Student Debt Collection on Communities of Color ............................. 4

    IV.    Plaintiffs' FOIA Request and ED's Response ..................................................................... 5

STANDARD OF REVIEW .................................................................................................................. 5

    I.    In a FOIA Suit, The Burden Rests with the Agency to Demonstrate the Applicability of a Claimed Exemption ............................................................................................................................ 5

    II.    The Agency's Submissions Must Provide Details Demonstrating the Applicability of a Claimed Exemption ............................................................................................................................ 6

ARGUMENT ....................................................................................................................................... 7

    I.    ED Has Failed to Demonstrate that it Properly Withholds Material Pursuant to Exemption 7(E) for Law Enforcement Techniques and Procedures ................................................................... 8

        A.    ED Improperly Invokes Exemption 7(E) Because Its Collection of Defaulted Debt is Not Law Enforcement .................................................................................................................... 8

        B.    ED Does Not Satisfy Exemption 7(E)'s Remaining Requirements. ........................................ 12

            1.    ED does not describe the nature of withheld information with sufficient specificity to enable the Court to analyze the applicability of Exemption 7(E) ................................................. 12

            2.    ED does not establish that withheld information was a technique, procedure or guideline or that its disclosure could be expected to risk circumvention of the law ............................ 13

                a.    ED withholds material that is not techniques, procedures or guidelines ............................ 13

                b.    ED withholds material that does not create an increased risk of circumvention of the law ..................................................................................................... 15

                   i.    Insufficient detail ................................................................................... 15

                   ii.    No reasonably expected risk of circumvention ............................................... 17

    II.    ED Has Failed to Demonstrate that it Properly Withholds Material Pursuant to Exemption 5 ........................................................................................................................... 20

        A.    ED Improperly Invokes the Deliberative Process Exemption ..................................... 20

            1.    ED has not shown that the material is predecisional ................................................ 21

            2.    ED has failed to demonstrate that the material is deliberative ................................. 23

            3.    ED has withheld documents that constitute its working law ................................... 23

B.   ED Improperly Invokes the Work Product Exemption ................................................... 24

III.   ED Improperly Withheld 131 Pages in Full Under Exemption 3 ...................................... 27

A.   Exemption 3 Only Applies to Information that is Included Within the Protection of a Qualifying Statute ...................................................................................................................................... 27

B.   ED Fails to Establish that PIA Applies to All 131 Pages of Information Withheld Under Exemption 3 ................................................................................................................................ 28

CONCLUSION ................................................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ACLU Found. of Mass. v. FBI*,
  No. 14-cv-11759, 2016 U.S. Dist. LEXIS 110022
  (D. Mass. Aug. 17, 2016) ............................................................. 14, 15

*ACLU Found. v. U.S. Dep't of Justice*,
  833 F. Supp. 399 (S.D.N.Y. 1993) ............................................... 13

*ACLU v. Dep't of Homeland Sec.*,
  973 F. Supp. 2d 306 (S.D.N.Y. 2013) ....................................... 14, 19

*Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*,
  626 F.3d 678 (2d Cir. 2010) ....................................................... 13, 14

*Allen v. CIA*,
  636 F.2d 1287 (D.C. Cir. 1980) ...................................................... 7

*Am. Immigr. Council v. U.S. Dep't of Homeland Security*,
  950 F. Supp. 2d 221 (D.D.C. 2013) ............................................. 12

*Amnesty Int'l USA v CIA*,
  728 F. Supp. 2d 479 (S.D.N.Y. 2010) .......................................... 28

*Bagwell v. U.S. Dep't of Educ.*,
  183 F. Supp. 3d 109 (D.D.C. 2016) ...................................... 10, 20, 29

*Birch v. U.S. Postal Serv.*,
  803 F.2d 1206 (D.C. Cir. 1986) ................................................. 9, 11

*Blackwell v. FBI*,
  646 F.3d 37 (D.C. Cir. 2011) .................................................... 10, 18

*Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice*,
  697 F.3d 184 (2d Cir. 2012) ........................................................ 24

*Campbell v. U.S. Dep't of Justice*,
  164 F.3d 20 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999) ......................... 9

*Carpenter v. U.S. Dep't of Justice*,
  470 F.3d 434 (1st Cir. 2006) ........................................................ 8

*Church of Scientology Int'l v. U.S. Dep't of Justice*,
  30 F.3d 224 (1st Cir. 1994) ................................................... passim

*Clemente v. FBI*,
  741 F. Supp. 2d 64 (D.D.C. 2010) ............................................... 12

*Coastal States Gas Corp. v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980) ..................................................... 22

*Com. of Mass., by Dep't of Pub. Welfare v. U.S. Dep't of Health & Human Servs.*,
  727 F. Supp. 35 (D. Mass. 1989) ................................................. 24

*Ctr. for Nat. Policy Review on Race & Urban Issues v. Weinberger*,
  502 F.2d 370 (D.C. Cir. 1974) .................................................. 9, 11

*Defenders of Wildlife v. U.S. Border Patrol,*
  623 F. Supp. 2d 83 (D.D.C. 2009) ............................................................................. 7, 17
*Delaney, Migdail & Young, Chartered v. IRS,*
  826 F.2d 124 (D.C. Cir. 1987) ................................................................................ 26, 27
*Dep't of the Air Force v. Rose,*
  425 U.S. 352 (1976) .......................................................................................................... 6
*El Badrawi v. Dep't of Homeland Sec.,*
  583 F. Supp. 2d 285 (D. Conn. 2008) ........................................................................ 17
*Elec. Privacy Info. Ctr. v. U.S. Drug Enf't Agency,*
  192 F. Supp. 3d 92 (D.D.C. 2016) .............................................................................. 15
*Families for Freedom v. U.S. Customs and Border Protection,*
  837 F. Supp. 2d 287 (S.D.N.Y. 2011) .................................................................. 15, 18
*Ferri v. Bell,*
  645 F.2d 1213 (3d Cir. 1981) ....................................................................................... 16
*Feshbach v. SEC,*
  5 F. Supp. 2d 774 (N.D. Cal. 1997) .............................................................................. 6
*Hawkes v. IRS,*
  507 F.2d 481 (6th Cir. 1974) ........................................................................................ 19
*Irons v. Bell,*
  596 F.2d 468 (1st Cir. 1979) ...................................................................................... 9, 11
*King v. U.S. Dep't of Justice,*
  830 F.2d 210 (D.C. Cir. 1987) ....................................................................................... 7
*Krikorian v. Dep't of State,*
  984 F.2d 461 (D.C. Cir. 1993) ....................................................................................... 7
*Lamont v. Dep't of Justice,*
  475 F. Supp. 761 (S.D.N.Y. 1979) ................................................................................ 8
*Lazaridis v. U.S. Dep't of State,*
  934 F. Supp. 2d 21 (D.D.C. 2013) ............................................................................... 15
*Legal & Safety Empl. Research Inc. v. U.S. Dep't of the Army,*
  No. S001748, 2011 WL 34098652 (E.D. Cal. 2001) ................................................. 28
*Living Rivers v. U.S. Bureau of Reclamation,*
  272 F. Supp. 2d 1313 (D. Utah 2003) ........................................................................ 14
*Long v. U.S. Dep't of Justice,*
  450 F. Supp. 2d 42 (D.D.C. 2006) .............................................................................. 19
*Maine v. U.S. Dep't of Interior,*
  124 F. Supp. 2d 728 (D. Me. 2000) ............................................................................... 6
*Maine v. U.S. Dep't of Interior,*
  298 F.3d 60 (1st Cir. 2002) ............................................................................... 6, 7, 25
*Malizia v. U.S. Dep't of Justice,*
  519 F. Supp. 338 (S.D.N.Y. 1981) ................................................................................ 9

*Maryland Coalition for Integrated Educ. v. Dep't of Educ.,*
No. 89-2851, 1992 WL 1311694 (D.D.C. July 20, 1992)........................................ 9

*Matusevich v. Middlesex Mut. Assur. Co.,*
782 F.3d 56 (1st Cir. 2015) ........................................................................................ 6

*Mayer Brown LLP v. IRS,*
562 F.3d 1190 (D.C. Cir. 2009) ....................................................................... 15, 18

*Maynard v. CIA.,*
986 F.2d 547 (1st Cir. 1993) ............................................................................... 7, 27

*Moffat v. U.S. Dep't of Justice,*
716 F.3d 244 (1st Cir. 2013) ............................................................................... 5, 8

*N. Dartmouth Properties, Inc. v. U.S. Dep't of Hous. & Urban Dev.,*
984 F. Supp. 65 (D. Mass. 1997) ............................................................................ 22

*N.L.R.B. v. Sears, Roebuck & Co.,*
421 U.S. 132 (1975) ..................................................................... 20, 21, 22, 24

*National Wildlife Fed'n v. Forest Serv.,*
861 F.2d 1114 (9th Cir. 1988)................................................................................. 23

*Patterson v. IRS,*
56 F.3d 832 (7th Cir. 1995)....................................................................................... 8

*PHE, Inc. v. Dep't of Justice,*
983 F.2d 248 (D.C. Cir 1993) ............................................................... 12, 18, 19

*Pikes Peak Family Housing, LLC v. United States,*
40 Fed. Cl. 673 (1998) ............................................................................................. 27

*Pratt v. Webster,*
673 F.2d 408 (D.C. Cir. 1982) ............................................................................ 9, 11

*Providence Journal Company v. U.S. Dep't of the Army,*
981 F.2d 552 (1st Cir. 1992) .......................................................... 6, 20, 21, 23

*Pub. Emps. for Envtl. Responsibility v. EPA,*
978 F. Supp. 955 (D. Colo. 1997) .......................................................................... 18

*Reilly v. EPA,*
429 F. Supp. 2d 335 (D. Mass. 2006) ...................................................................... 6

*Riser v. U.S. Dep't of State,*
No. 09-3273, 2010 WL 4284925 (S.D. Tex. 2010) .............................................. 16

*Schiller v. N.L.R.B.,*
964 F.2d 1205 (D.C. Cir. 1992) .............................................................................. 26

*Shapiro v. Dep't of Justice,*
205 F. Supp. 3d 68 (D.D.C. 2016) .......................................................................... 15

*Stalcup v. CIA,*
768 F.3d 65 (1st Cir. 2014) ..................................................................................... 20

*Stern v. FBI,*
737 F.2d 84 (D.C. Cir. 1984) ................................................................................... 8

*Strunk v. U.S. Dep't of State*,
  845 F. Supp. 2d 38 (D.D.C. 2012) ......................................................................... 12
*Tax Analysts v. IRS*,
  294 F.3d 71 (D.C. Cir. 2002) ........................................................................... 9, 11
*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
  489 U.S. 749 (1989) ........................................................................................... 19
*United States v. Adlman*,
  134 F.3d 1194 (2d Cir. 1998) .............................................................................. 25

**Statutes & Regulations**

5 U.S.C. § 552 ............................................................................................... passim
20 U.S.C. § 1070 et seq. ............................................................................ 2, 3, 11
31 U.S.C. § 3711 ................................................................................................. 10
41 U.S.C. § 2101 .......................................................................................... 27, 28
41 U.S.C. § 2102 ................................................................................................. 28
41 U.S.C. § 2107 ................................................................................................. 27
42 U.S.C. § 2000d .............................................................................................. 11
34 C.F.R. § 685.211 ........................................................................................... 19
34 C.F.R. §§ 30.20–30.31 .................................................................................. 19
34 C.F.R. §§ 34.1–34.30 .................................................................................... 19

**Other Authorities**

Attorney General's Memorandum on the 1974 Amendments to the Freedom of Information Act
  (1975), *reprinted in* Freedom of Information Act & Amendments of 1974 (P.L. 93-502)
  Source Book: Legislative History, Texts & Other Documents, Joint Committee Print, 94th
  Cong., 1st Sess. 516 (1975) .................................................................................. 9
U.S. Department of Education, "About ED," https://www2.ed.gov/about/landing.jhtml ............. 1

# INTRODUCTION

The Department of Education (ED)[1] contracts with private companies to collect defaulted

federal student debt in exchange for fees. The Government Accountability Office and ED's own

Office of the Inspector General have strenuously criticized ED's oversight of these private

collection agencies (PCAs) and its failure to protect borrowers' rights in the collection process.

To aid millions of impacted borrowers and to educate the public, Plaintiffs, both advocacy

organizations, filed a request pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. §

552, seeking information about ED's policies and practices with respect to the PCAs and data

about the racial impact of its collection practices. Although ED is aware of racial disparities in its

loan portfolio, ED eventually made clear that it maintains no race data at all. It also ultimately

identified numerous responsive documents and produced many of them in heavily redacted form.

ED claims that several FOIA exemptions allow it to prevent the public from accessing this vital

information about its instructions to the PCAs. Plaintiffs challenge ED's assertion of Exemptions

7(E), 5, and 3.[2]

To begin, ED's submission to this Court seeking to justify its numerous withholdings is

too generalized and vague to give Plaintiffs or this Court enough information to understand

them. To the extent that the Court reaches the substance of any of these claimed exemptions, ED

repeatedly fails to demonstrate their applicability. Most egregiously, to demonstrate that ED

meets the threshold requirement for assertion of FOIA's Exemption 7(E)—that information was

compiled for a "law enforcement purpose"—ED claims that the collection of defaulted debt from

---

[1] Although the Department of Education's brief here uses the abbreviation "DOE," the agency generally refers to itself as "ED" to avoid confusion with the federal Department of Energy, known as DOE. *See* U.S. Dep't of Educ., "About ED," https://www2.ed.gov/about/landing.jhtml.

[2] Plaintiffs have opted not to challenge here ED's assertions of Exemptions 4, 6, or 7(C), although they do not waive their rights to challenge similar assertions in future litigation.

student-borrowers has such a purpose. Student-borrowers do have contractual obligations to repay their loans, but defaulting on those loans violates no law and subjects them to no civil or criminal sanction and thus cannot implicate FOIA's law enforcement exemption. ED's attempt to dramatically expand this exemption would swallow FOIA's rule of openness. ED also fails to carry its burden with respect to the other challenged exemptions. It does not demonstrate how policies that had already been adopted when a withheld document was created could still constitute predecisional material subject to Exemption 5's deliberative process privilege, and material ED withholds pursuant to Exemption 5's work product privilege was authored neither by nor for an attorney. The vagueness of its submissions on Exemption 3 prevents real analysis.

While acknowledging that FOIA can "complicate[] the task of governing," the First Circuit emphasizes that "its goals are worthy and we are bound to honor both its letter and its spirit." *Church of Scientology Int'l v. U.S. Dep't of Justice*, 30 F.3d 224, 229 (1st Cir. 1994). ED's use of Exemptions 7, 5 and 3 honors neither. This Court should therefore deny ED's motion for summary judgment, grant Plaintiffs' cross-motion, and order the agency to produce all of the withheld material. If the Court declines to enter such an order immediately, it should order ED to supplement its deficient Vaughn Index and declaration or examine the withheld material in camera.

## STATEMENT OF FACTS

### I.     Federal Student Debt, ED, and the PCAs.

Collectively, more than 42 million Americans have $1.3 trillion in federal student loan debt, and over $137 billion of that debt is in default. Local Rule 56.1 Statement of Undisputed Facts (SOF) ¶¶ 40–41. The Higher Education Act (HEA), 20 U.S.C. § 1070 et seq., authorizes the federal student loan program, and it establishes interest rates, flexible repayment options,

cancellation programs, and programs to help borrowers get out of default. SOF ¶ 42. When students or their parents take out a federal loan, they sign a master promissory note that incorporates by reference their rights under the HEA. *Id.* ¶¶ 43–44.

ED holds the vast majority of outstanding student loan debt, so its collection policies and practices have tremendous consequences for student-borrowers. *Id.* ¶ 45. Federal Student Aid (FSA), the ED entity responsible for administering federal student loans, relies on private companies to service ED held loans that are in good standing. *Id.* ¶ 46. If a loan enters default, the account is transferred back from the loan servicer to ED. *Id.* ¶ 47. ED then refers every eligible defaulted student loan debt to one of the PCAs. *Id.* ¶ 48.

ED contracts with the PCAs not only to collect money, but also to communicate with borrowers about options to resolve their debt. *Id.* ¶ 49. Although the PCAs are supposed to counsel each borrower about the most appropriate option for his or her individual circumstances, ED's commission structure provides PCAs with incentives to steer borrowers toward options that yield the highest commission for the PCAs. *Id.* ¶ 54. Borrowers remain eligible for numerous programs after falling into default; as detailed in statute and regulation, they can have their loans cancelled if they are totally and permanently disabled, if they went to a school that closed while they were attending, or if their eligibility for the loan was falsely certified by the school. *Id.* ¶¶ 50–51. Statute and regulation also make clear that borrowers can get out of default through either loan consolidation or rehabilitation, that is, by making certain numbers of payments at levels that take their financial circumstances into account. *Id.* ¶ 52–53.

ED's instructions to the PCAs are contained within the PCA Manual, which was publicly available online until 2010. *Id.* ¶ 65. ED now claims that substantial portions of the manual cannot be publicly disclosed.

3

## II.     ED's Oversight of the PCAs.

Serious questions have been raised about ED's oversight of PCAs. In 2014, ED's Office of Inspector General found that ED did not "effectively ensure that [PCAs] are abiding by the Federal debt collection laws and the related terms of their contractual agreements," and that ED failed to incorporate borrower complaints into its oversight of the collection agencies. *Id.* ¶ 55. That same year, the Government Accountability Office expressed substantial doubts about ED's oversight of PCAs in testimony to Congress. *Id.* ¶ 56. ED did not factor a PCA's record of borrower complaints or service quality into its evaluation of PCAs, although it had the authority to do so. *Id.* ¶ 57. ED continues to grant new contracts to PCAs that it found to have "made materially inaccurate representations" to borrowers about their options. *Id.* ¶ 58. Plaintiff National Consumer Law Center continues to document problems related to ED's oversight of PCAs and to bring these problems to ED's attention. *Id.* ¶ 59.

## III.    Disproportionate Impact of Student Debt Collection on Communities of Color.

These failures particularly affect student loan borrowers of color, because those borrowers both bear disproportionately large debt burdens and are at increased risk of exposure to delinquency and default. *Id.* ¶ 61. Compared to white adults, Black adults are approximately twice as likely to hold student debt, and Latino adults are about 1.75 times as likely. *Id.* ¶ 62. One study found that compared to their white peers, the default rate for Black borrowers ten years after graduation was more than five times as high, and the rate for Latino borrowers was more than twice as high. *Id.* ¶ 63. As a result, borrowers of color are disproportionately at risk of being subject to the costs of default, as well as forced collection through administrative wage garnishment, seizure of federal benefits or tax refunds, and other damaging debt collection practices. *Id.* ¶ 64.

IV.     **Plaintiffs' FOIA Request and ED's Response.**

On May 7, 2015, Plaintiffs filed a FOIA request with ED seeking information about ED's relationship with PCAs, the policies that govern PCAs' debt collection activities, and the way that PCAs are compensated, as well as information concerning ED's policies, if any, for monitoring the particular impacts of student debt on communities of color. *Id.* ¶ 66. ED eventually produced interim responses in December 2015 and in March 2016. *Id.* ¶¶ 67–72. Its March response noted that ED had "outstanding responsive documents" in its possession and that the responses did not constitute a final determination. *Id.* ¶ 72. On March 30, 2016, nearly eleven months after filing their Request and still lacking a final response, Plaintiffs filed this lawsuit to enforce the public's right to information about ED's student debt collection practices. *Id.* ¶ 73.

Plaintiffs repeatedly inquired about the outstanding documents and requested production by July 22, 2016 to enable review before the August 4, 2016 status conference. *Id.* ¶¶ 74–76. ED produced the documents the day before that status conference. *Id.* ¶ 77.

On September 30, 2016, parties filed a Joint Status Report with this Court, ECF No. 35, indicating that ED would provide Plaintiffs with the documents both parties agreed were outstanding by October 28, 2016. SOF ¶¶ 78–81. The parties agreed, based on that date, that ED's summary judgment brief would be due on January 13, 2017. *Id.* ¶ 81; ECF No. 35. That production, however, was not timely completed, and counsel for ED secured Plaintiffs' agreement to a ninety-day extension of the summary judgment briefing calendar. SOF ¶¶ 82–83.

## STANDARD OF REVIEW

I.     **In a FOIA Suit, The Burden Rests with the Agency to Demonstrate the Applicability of a Claimed Exemption.**

FOIA exists to "expose the operations of federal agencies 'to the light of public scrutiny.'" *Moffat v. U.S. Dep't of Justice*, 716 F.3d 244, 250 (1st Cir. 2013) (quoting *Dep't of*

*the Air Force v. Rose*, 425 U.S. 352, 361 (1976)). As a result, "[w]hen faced with a FOIA claim, a district court makes a *de novo* determination of the validity of an agency's claim of exemption, and it should resolve any doubts it has over the exemption claim 'in favor of openness.'" *Maine v. U.S. Dep't of Interior*, 124 F. Supp. 2d 728, 736 (D. Me. 2000) (quoting *Providence Journal Company v. U.S. Dep't of the Army*, 981 F.2d 552, 557 (1st Cir. 1992)) [*Maine I*].

On cross-motions for summary judgment, a court "evaluate[s] each motion independently and determine[s] whether either of the parties deserves judgment as a matter of law on facts that are not disputed." *Matusevich v. Middlesex Mut. Assur. Co.*, 782 F.3d 56, 59 (1st Cir. 2015) (internal quotation marks omitted). In a FOIA action, "the burden under the statute is on the agency to demonstrate the applicability of a claimed exemption" in order to win as a matter of law. *Maine v. U.S. Dep't of Interior*, 298 F.3d 60, 65 (1st Cir. 2002) [*Maine II*] [3]; *Reilly v. EPA*, 429 F. Supp. 2d 335, 341 (D. Mass. 2006). Conversely, plaintiffs "need only point to the insufficiency of the [government's] evidence" to prevail. *Feshbach v. SEC*, 5 F. Supp. 2d 774, 787 (N.D. Cal. 1997).

## II.    The Agency's Submissions Must Provide Details Demonstrating the Applicability of a Claimed Exemption.

"An agency's burden of establishing a FOIA exemption is significant, and conclusory assertions of privilege by a defendant agency regarding an exemption claim will not fulfill its burden of proof in a FOIA action." *Maine I*, 124 F. Supp. 2d at 736–37. Instead, the government must "supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a

---

[3] *Maine II* reversed in part, holding that *Maine I* applied an incorrect definition of attorney work product. 298 F.3d at 68. However, *Maine II* affirmed the ruling that the government's Vaughn Index and declarations were insufficient to establish any FOIA exemption. *Id.* at 69–70, 72. The Circuit Court also affirmed the lower court's decision to order immediate disclosure without providing the government an opportunity to revise its submissions. *Id.* at 73.

withheld document to which they apply.'" *Church of Scientology*, 30 F.3d at 231 (quoting

*Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993) (emphasis omitted)). The

contents of the submissions must be sufficiently detailed to afford "the FOIA requester a

meaningful opportunity to contest, and the district court an adequate foundation to review, the

soundness of the withholding." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 217–18 (D.C. Cir.

1987); *see also Church of Scientology*, 30 F.3d at 233 (good faith by government "does not

relieve it of its obligation . . . to provide enough information to enable the adversary process to

operate in FOIA cases."). Vaughn indexes and declarations that "merely parrot the language of

the statute and are drawn in conclusory terms" do not meet this standard. *Defenders of Wildlife v.

U.S. Border Patrol*, 623 F. Supp. 2d 83, 90 (D.D.C. 2009) (internal quotation marks omitted).

The government's failure to provide sufficiently detailed submissions is grounds to order

immediate disclosure. *Maine II*, 298 F.3d at 73. Alternatively, "FOIA provides for *in camera*

review, at the district court's discretion, if the court finds the agency's materials in support of

exemption to be too generalized" or "when the government's showing otherwise is inadequate to

satisfy the burden of proving the exempt status of withheld documents." *Church of Scientology*,

30 F.3d at 233 (citing *Maynard v. CIA.*, 986 F.2d 547, 557–58 (1st Cir. 1993)); 5 U.S.C. §

552(a)(4)(B). In camera review is particularly appropriate where there is strong public interest in

disclosure, as "[w]hen citizens request information to ascertain whether a particular agency is

properly serving its public function." *Allen v. CIA*, 636 F.2d 1287, 1298 (D.C. Cir. 1980).

## **ARGUMENT**

Because FOIA "embodies a broad policy in favor of disclosure," its "nine exemptions are

to be construed narrowly, with all doubts resolved in favor of disclosure." *Moffat*, 716 F.3d at

250 (citing *Carpenter v. U.S. Dep't of Justice*, 470 F.3d 434, 438 (1st Cir. 2006)). ED fails to

demonstrate that Exemptions 7, 5 and 3 apply here.

## I.   ED Has Failed to Demonstrate that it Properly Withholds Material Pursuant to Exemption 7(E) for Law Enforcement Techniques and Procedures.

Although ED cites Exemption 7 in nearly half of its Vaughn entries, it is entirely

inapposite. Exemption 7 applies only when the withheld information was compiled for law

enforcement purposes. Because the withheld material here concerns the collection of defaulted

debt—a contractual matter—this Court should end its analysis at this threshold step. But ED fails

to demonstrate that the withheld material meets the additional 7(E) requirements: that it (1)

contains law enforcement techniques, procedures or guidelines that are generally unknown to the

public and (2) can reasonably be expected to risk circumvention of the law, if disclosed. 5 U.S.C.

§ 552(b)(7)(E).

### A.   ED Improperly Invokes Exemption 7(E) Because Its Collection of Defaulted Debt is Not Law Enforcement.

Exemption 7 permits an agency to withhold only material that is "compiled for law

enforcement purposes" when that material also meets the requirements enumerated in one of the

provision's subsections. 5 U.S.C. § 552(b)(7). In keeping with the limited nature of FOIA

exemptions, "law enforcement purposes" has a carefully circumscribed meaning. A law

enforcement purpose is an "adjudicative or enforcement purpose[ ]," related to "the enforcement

of both civil and criminal federal laws." *Stern v. FBI*, 737 F.2d 84, 88 (D.C. Cir. 1984); *see also*

*Patterson v. IRS*, 56 F.3d 832, 837 (7th Cir. 1995). Acting with a law enforcement purpose

means "preventing, discovering or applying sanctions against noncompliance with federal

statutes or regulations." *Lamont v. Dep't of Justice*, 475 F. Supp. 761, 773 (S.D.N.Y. 1979)

(quoting Attorney General's Memorandum on the 1974 Amendments to the Freedom of

Information Act (1975)[4]); *see also Malizia v. U.S. Dep't of Justice*, 519 F. Supp. 338, 347 (S.D.N.Y. 1981) ("'Law enforcement' includes the detection and punishment of law violation.") (quoting same Attorney General's Memorandum); *Birch v. U.S. Postal Serv.*, 803 F.2d 1206, 1210 (D.C. Cir. 1986) (Exemption 7 applies to enforcement of laws that could "result in civil or criminal sanctions").

Courts are more deferential to a claim of law enforcement purpose when it comes from an agency like the FBI "whose primary function involves [criminal] law enforcement." *Tax Analysts v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002). In contrast, agencies with both administrative and law enforcement functions are "subject to an exacting standard when it comes to the threshold requirement of Exemption 7," and "a court must scrutinize with some skepticism the particular purpose claimed for disputed documents." *Id.* (citing *Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982)); *see also Irons v. Bell*, 596 F.2d 468, 473 (1st Cir. 1979).

For good reason, ED does not claim that it is a law enforcement agency like the FBI. ED is a mixed-function agency, and its claim to act with a law enforcement purpose is subject to searching examination. *See Ctr. for Nat. Policy Review on Race & Urban Issues v. Weinberger*, 502 F.2d 370, 373–74 (D.C. Cir. 1974) (Department of Health, Education, and Welfare, predecessor to ED, was a mixed-function agency); *Maryland Coalition for Integrated Educ. v. Dep't of Educ.*, No. 89-2851, 1992 WL 1311694, at *4–5 (D.D.C. July 20, 1992) (ED is a mixed-function agency). ED's citation to *Campbell* and its "rational nexus" standard is therefore inapposite. Mem. of Law and Statement of Facts in Support of Defs.' Motion for Summary Judgment, ECF No. 45, ("Br."), 24–25; *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 40 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999) ("To show that the disputed documents were compiled for

---

[4] *Reprinted in* Freedom of Information Act & Amendments of 1974 (P.L. 93-502) Source Book: Legislative History, Texts & Other Documents, Joint Committee Print, 94th Cong., 1st Sess. 516 (1975).

law enforcement purposes, *the FBI need only* establish a rational nexus[.]") (emphasis added).
Defendant also cites *Bagwell v. U.S. Dep't of Educ.*, 183 F. Supp. 3d 109, 118 (D.D.C. 2016), in
which the trial court held that ED had satisfied Exemption 7's law enforcement purpose
requirement. Br. 25. But *Bagwell* mistakenly imported the D.C. Circuit's rational nexus
standard—explicitly framed in the language quoted above as applicable only to law enforcement
agencies like the FBI—into the ED context. *See Bagwell*, 183 F. Supp. 3d 109, 118 (D.D.C.
2016) (quoting *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011)).

Nonetheless, ED asks this Court to accept that it acts with a law enforcement purpose
when it instructs PCAs on how to go about collecting from student loan borrowers. It does not
point to any statute or regulation that student loan borrowers violate when they do not repay their
loans. It could not. Borrowers' repayment obligations do not arise from criminal, civil, or even
administrative law, but rather from the contracts they enter when they take out student loans. *See*
Master Promissory Note, Ex. 3 to Declaration of Persis Yu. By ED's own admission, the
withheld documents are related to "the enforcement *of borrowers' obligations to pay their
student loans*." Declaration of Ann Marie Pedersen, ECF No. 49 ("Pedersen Dec."), ¶ 59
(emphasis added). ED appears to argue that because there is a federal law, 31 U.S.C.
§ 3711(g)(9), requiring that agencies take certain steps to collect defaulted debt, the agency's
action pursuant to that law has a law enforcement purpose. Br. 25–26; *see also* Defendants'
Vaughn Index, ECF No. 45-3 ("Vaughn"), 1, 9–13 (repeatedly invoking "ED's ability to fulfill
its legal obligation to enforce the collection of the defaulted federal debt"). This statute provides
ED with no authority to level either civil or criminal sanctions against borrowers who have
defaulted on student debt—its mandate is directed at agencies, not debtors. It cannot be that
Exemption 7 applies whenever an agency acts pursuant to a statutory mandate or nearly every

action taken by a federal agency would qualify. Such a "broad [and] imprecise construction" of Exemption 7 would "swallow up" FOIA and "undercut its central goal of public access." *Birch v. U.S. Postal Serv.*, 803 F.2d 1206, 1209 (D.C. Cir. 1986) (citation and internal marks omitted).

The agency's further statement that it is "responsible for effecting the repayment of student loans distributed under . . . Title IV of the [Higher Education Act, 20 U.S.C. § 1070]," Pedersen Dec. ¶ 58, cannot suffice to overcome the skepticism with which courts treat claims of law enforcement purpose from mixed-function agencies. *Cf. Irons*, 596 F.2d at 471 (noting insufficiency of declaration where law enforcement purpose was described in "bare conclusory allegations"). That the agency has the "legal [and statutory] responsibility and authority . . . to effect the repayment of student loans," Pedersen Dec. at ¶ 20, does not by itself turn this administrative function into a law enforcement function. *See Weinberger*, 502 F.2d at 373 (documents "ancillary to [the] task" of "administering federal aid programs" would not be covered by Exemption 7).[5] Indeed, "that a mixed-function agency is acting within the scope of its authority tells a court nothing about whether it has met the Exemption 7 threshold requirement of a 'law enforcement purpose.'" *Tax Analysts*, 294 F.3d at 77 (quoting *Pratt*, 673 F.2d at 418 (internal citations omitted)). Applying the proper exacting standard—as it must—this Court should hold that ED did not compile the records for law enforcement purposes and order ED to disclose the improperly withheld documents.

---

[5] ED's citation to *Weinberger* provides it with no support. Br. at 25 (citing 502 F.2d 370, 373 (D.C. Cir. 1974)). The records at issue in *Weinberger* concerned the informal administrative enforcement of Title VI, 42 U.S.C. § 2000d-1. The *Weinberger* court specifically noted that the "effectiveness of these informal procedures is derived in large part from the sanction held in reserve," that is, termination of federal financial assistance to a former recipient. 502 F.2d at 373, 372. Here, by contrast, ED is not engaged in enforcing any statute, let alone one containing sanctions, against borrowers.

**B.  ED Does Not Satisfy Exemption 7(E)'s Remaining Requirements.**

Because the withheld materials were not compiled for a law enforcement purpose, this Court can reject ED's assertions of Exemption 7(E) on a blanket basis. But even if ED could meet this threshold requirement, Exemption 7(E) applies only if ED demonstrates that the withheld information (1) contains law enforcement techniques, procedures or guidelines that are generally unknown to the public, and (2) can reasonably be expected to risk circumvention of the law if disclosed. 5 U.S.C. § 552(b)(7)(E); *Am. Immigr. Council v. U.S. Dep't of Homeland Security*, 950 F. Supp. 2d 221, 245 (D.D.C. 2013). ED does not make this showing. In many instances, ED's description of the withheld information is so paltry that it renders any analysis under Exemption 7(E) impossible; in others, ED's justifications fail to satisfy one, or both, of these requirements.

    1.   <u>ED does not describe the nature of withheld information with sufficient specificity to enable the Court to analyze the applicability of Exemption 7(E).</u>

"[A]gency affidavits have immense significance in a FOIA case" because "only the agency knows the substance of the withheld information." *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250 (D.C. Cir 1993). The Court must understand the contents of the withheld information to assess whether the claimed exemption is appropriate. *See Strunk v. U.S. Dep't of State*, 845 F. Supp. 2d 38, 47 (D.D.C. 2012). Consequently, an agency "cannot rely upon [] vaguely worded categorical description[s] . . . and must instead provide evidence from which the Court can deduce something of the nature of the techniques in question." *Clemente v. FBI*, 741 F. Supp. 2d 64, 88 (D.D.C. 2010).

For many of ED's Exemption 7(E) redactions, the corresponding "submissions offer too little detail to allow this Court to undertake a meaningful assessment of the redacted material." *Strunk*, 845 F. Supp. 2d at 47. Although this problem is widespread, Plaintiffs focus here on

several of the most egregious instances. Specifically, the material redacted from ED 13 and ED 89[6] is described only as "details of processes" from "PCA Contract Documents ED-FSA-09-00025." Vaughn 1. Similarly, ED 284−288 and ED 456−461—all entirely redacted—are described simply as "details of processes" from the "PCA Participants Manual" and "FSA Participants Manual," respectively. Vaughn 3. Using identical descriptions, even the subchapter headings for these pages have been redacted from the index. ED 257, 364; Vaughn 3. Finally, ED 3242−3243, which is almost entirely redacted, is described simply as "special account condition details" from "PCA Procedures Manual 2.2." Vaughn 12. The near-blank pages provide no context allowing even a guess about the nature of the withheld information. Because "additional information [] is needed to evaluate the claimed exemption," this Court should either order ED to supplement its descriptions or undertake in camera review of the withheld documents. *ACLU Found. v. U.S. Dep't of Justice,* 833 F. Supp. 399, 403 (S.D.N.Y. 1993).

2. ED does not establish that withheld information was a technique, procedure or guideline or that its disclosure could be expected to risk circumvention of the law.

In addition to sufficiently describing the withheld information, to properly invoke Exemption 7(E) ED must establish *both* that it is a law enforcement technique, procedure or guideline *and* that its disclosure can reasonably be expected to risk circumvention of the law. 5 U.S.C. § 552(b)(7)(E). ED repeatedly fails to make one, or both, of these demonstrations.

a. *ED withholds material that is not techniques, procedures or guidelines.*

Because FOIA does not define techniques, procedures and guidelines, courts have relied on the dictionary to define these terms. *See, e.g.*, *Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 682 (2d Cir. 2010); *ACLU v. Dep't of*

---

[6] This brief refers to the documents at issue by their Bates number. All Bates-numbered documents are attached to the Declaration of Rachel E. Goodman, which also contains an index of those documents as Table 1.

*Homeland Sec.*, 973 F. Supp. 2d 306, 319 (S.D.N.Y. 2013) ("*ACLU*"); *ACLU Found. of Mass. v.*

*FBI*, No. 14-cv-11759, 2016 U.S. Dist. LEXIS 110022, at *14 (D. Mass. Aug. 17, 2016)

(Burroughs, J.). Citing Webster's Third New International Dictionary, *Allard* explained that

within the context of Exemption 7(E), "techniques and procedures" refers "to how law

enforcement officials go about investigating a crime," whereas "guidelines" refers to "resource

allocation." 626 F.3d at 682. Information that does not fit these limited definitions does not

qualify for Exemption 7(E), regardless of whether its disclosure could reasonably be expected to

risk circumvention. *Living Rivers v. U.S. Bureau of Reclamation*, 272 F. Supp. 2d 1313, 1321 (D.

Utah 2003) (holding Exemption 7(E) did not apply without reaching circumvention where

agency failed to establish that the maps qualified as techniques, procedures, or guidelines);

*ACLU*, 973 F. Supp. 2d at 318−19 (holding Exemption 7(E) did not apply without reaching

circumvention where government failed to establish unidentified criminal record was a

technique, procedure, or guideline).

  Here, several claimed Exemption 7(E) redactions fall entirely outside of these definitions.

For example:

- The testing methodology, notes and observations from reviews designed to ensure that the PCAs are placing and answering calls in compliance with federal law and providing accurate information to borrowers. ED 152−ED 227 (hereinafter, "call-review redactions").

- Information from the PCA Manual's "Complaints against the PCA" chapter, including the PCA's standard of conduct and the PCA's process for responding to complaints. ED 3244−3253 (hereinafter, "PCA-complaint redactions").

ED makes no attempt to explain how (1) the methodology and observations from the PCA's call

review, (2) the PCA's standard of conduct, or (3) the PCA's complaint procedure constitutes a

technique, procedure or guideline. Such silence is dispositive. Because ED "has not satisfied its

burden of demonstrating that Exemption 7(E) applies to these [] materials," it must disclose the information. *ACLU of Mass. v. FBI*, 2016 U.S. Dist. LEXIS 110022 at *13.

> ### b. *ED withholds material that does not create an increased risk of circumvention of the law.*

Although "*any* information about past law enforcement practices could theoretically give would-be criminals help that they would not otherwise have," that is not the test for Exemption 7(E)'s circumvention requirement. *Families for Freedom v. U.S. Customs and Border Protection*, 837 F. Supp. 2d 287, 300 (S.D.N.Y. 2011) (emphasis in original). Instead, "Congress has made clear" that the government must establish "a *reasonable* increased risk of circumvention of the law." *Id.* (emphasis in original). "[C]onclusory, generalized or sweeping allegations" cannot satisfy this burden. *Elec. Privacy Info. Ctr. v. U.S. Drug Enf't Agency*, 192 F. Supp. 3d 92, 103 (D.D.C. 2016); *see also Lazaridis v. U.S. Dep't of State*, 934 F. Supp. 2d 21, 39 (D.D.C. 2013) (holding that "vague conclusion[s] coupled with [] opaque descriptions in the *Vaughn* index" do not satisfy the government's obligation to demonstrate that the withheld information may create a reasonable risk of circumvention). Applying this standard, ED repeatedly fails to satisfy the circumvention requirement.[7]

> ### i.   Insufficient detail.

In numerous instances, ED offers either no justification or merely "threadbare statements" which "fall far short of meeting the government's burden to 'demonstrate[] logically how the release of [the requested] information might create a risk of circumvention of the law' as required by Exemption 7(E)." *Shapiro v. Dep't of Justice*, 205 F. Supp. 3d 68, 74 (D.D.C. 2016) (alterations in original) (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir.

---

[7] The fact that ED has failed to identify any law that could be circumvented by disclosure of the withheld material, *see supra* Section I.A, makes it difficult to perform any circumvention analysis at all.

2009)). This is true with respect to the call-review and PCA-complaint redactions described above, as well as the following redactions:

- Information from the PCA Manual's "Consolidation" chapter, including details about forced income-driven repayment consolidations and the process for Fast-Track Consolidation. ED 3037–3047.

- Information from the PCA Manual's "Account Returns, Administrative Resolutions, and Bankruptcy" chapter, including proper documentation of death for administrative resolution, the different categories of incarceration that qualify for account recall, and the process the PCAs should follow in response to incarceration or bankruptcy. ED 3259–3266.

Neither the Vaughn Index nor the Pedersen Declaration includes any justification for the PCA-complaint redactions. ED 3244–3253.[8] ED does little more to explain the heavy redaction of the 75 pages of testing methodology, notes and observations from the PCA call-review, stating only that this information is "related to policies and procedures of the Department in fulfilling its obligation to collect federal student loan debt." Vaughn 2; ED 152–227.[9] ED cannot satisfy its burden with such bald assertions "as if the risk of circumvention of the law were self-evident." *Riser v. U.S. Dep't of State*, No. 09-3273, 2010 WL 4284925, at *6 (S.D. Tex. 2010); *see also Ferri v. Bell*, 645 F.2d 1213, 1224 (3d Cir. 1981) (*de novo* review implicitly rejects deferring to agency's "bald assertion").

Finally, to justify withholding information from the PCA Manual's "Consolidation" chapter, ED vaguely states:

Details of process employed by PCAs under contract with DOE related to enforcement of collection of defaulted student loans, the disclosure of which could allow defaulted borrowers or private companies offering services to defaulted borrowers to identify means to circumvent or manipulate DOE's process for handling defaulted student loans

---

[8] These page numbers are erroneously included in the Vaughn Index entry regarding the PCA Manual's "Special Account Condition" chapter. Vaughn 12. The Pedersen Declaration never mentions this information.

[9] The Pedersen Declaration never mentions this information.

in an effort to avoid legal consequences of default, or otherwise hamper DOE's ability to fulfill its legal obligation to enforce the collection of defaulted federal debt.

Vaughn 9; ED 3037–3047.[10] It uses functionally identical language to justify withholding information from the PCA Manual's "Account Returns, Administrative Resolutions, and Bankruptcy" chapter. Vaughn 12; ED 3259–3266.[11] These "categorical indication[s] of anticipated consequences of disclosure" are "clearly inadequate." *El Badrawi v. Dep't of Homeland Sec.*, 583 F. Supp. 2d 285, 310 (D. Conn. 2008) (internal quotation marks omitted).[12] Other than "accepting the agency's summary conclusion on its face"—which it cannot do—this Court has "no basis to determine, as it must under exemption 7(E) whether . . . [the] release of the information could reasonably be expected to risk circumvention of the law." *Defenders of Wildlife*, 623 F. Supp. 2d at 90 (internal citations omitted). And the withholding of these PCA manual sections is particularly troubling in light of the fact that the entire PCA manual was posted online and available publicly for years. SOF ¶ 65.

> ii.     No reasonably expected risk of circumvention.

ED's slightly more-detailed descriptions for some of its Exemption 7(E) redactions nonetheless fail to establish circumvention. Examples include:

- Information from the PCA Manual's Treasury Offset Program (TOP) chapter, including details about 65-day notices, the process for TOP certification, and methods to identify TOP certified borrowers. ED 3165–3169.

---

[10] With respect to this information, the Pedersen Declaration only mentions that ED has withheld "details of the Fast-Track program available for certain eligible borrowers" because it could lead to "manipulation or evasion of the collection process if disclosed." Pedersen Dec. ¶ 61.

[11] That entry contains minor alterations, stating: "Details of internal processes, the disclosure of which could allow defaulted borrowers or private companies offering their services to defaulted borrowers to circumvent the law and avoid repayment of the defaulted debt or otherwise hamper DOE's ability fulfill [sic] its legal obligation to enforce the collection of the defaulted federal debt." Vaughn 12. The Pedersen Declaration never mentions this information.

[12] That a nearly-identical statement is used to justify withholding information from more than 30 other documents underscores the categorical nature of this language. Vaughn 1–4, 9–10, 12–13.

- Information from the PCA Manual's "Administrative Wage Garnishment" chapter, including the process to address non-compliant employers, details about administrative wage garnishment hearings, and requirements for voluntary repayments. ED 3089–3162.

- Information from the PCA Manual's "Rehabilitation" chapter, including borrower requirements, acceptable documentation for the Financial Information Statement, details about Rehabilitation Agreement Letters, and the process for preparing and submitting an account for rehabilitation funding. ED 3017–3031.

ED generally argues that revealing this information "could lead to manipulation or evasion of the collection process," Pedersen 22, and "would provide borrowers and companies that offer their services to borrowers with the tools necessary to delay or even wholly evade enforcement of the borrowers loan obligations," Pedersen 21.[13] However, these concerns do not match up with the redacted information. Even courts that impose the lowest possible hurdle to Exemption 7(E)'s circumvention requirement apply a reasonableness standard to the government's demonstration. *See, e.g.*, *Blackwell*, 646 F.3d at 42 (government must establish there is a "chance of a reasonably expected risk"); *Mayer Brown*, 562 F.3d at 1193–94 (same). The information described above sets forth the legal basis and general process for PCA actions. If disclosed, it simply would not result in any "reasonably expected risk" of circumvention. *See Families*, 837 F. Supp. 2d at 300. Instead, "[m]aterial like this is precisely the type of information appropriate for release under FOIA." *PHE*, 983 F.2d at 251–52 (agency cannot withhold manual sections discussing relevant law); *see also Pub. Emps. for Envtl. Responsibility v. EPA*, 978 F. Supp. 955, 961–62 (D. Colo. 1997) (agency cannot withhold manual sections describing the process to maintain confidentiality of sources and explaining reasons for declining prosecution in certain cases).

---

[13] The Vaughn entries for this information are nearly identical to the opaque language described *supra.*

Moreover, the withheld information describes processes that are already defined by regulation, which cannot create a risk of circumvention of the law. *See ACLU*, 973 F. Supp. 2d at 318 (holding "law enforcement information exemption is not available" to withhold information about the decision to continue to detain removable detainees in part because the "procedure for determining whether to continue detention [] is available in 8 C.F.R. § 241.14").[14] The treasury offset, administrative wage garnishment, and rehabilitation programs are all governed in detail by regulation. 34 C.F.R. §§ 30.20−30.31, §§ 34.1−34.30, § 685.211.  For the administrative wage garnishment and treasury offset programs, these regulations set out the procedures that ED must follow prior to seizing a borrower's funds, down to the notices that must be sent and the process if the borrower objects. The rehabilitation regulations set forth exactly how many payments need to be made in what time frame and how to calculate the payment amounts. ED's fear that this information would provide borrowers and "companies marketing their services to borrowers" with "a roadmap to evade loan repayment" is thus unfounded. Br. 27.

To the contrary, particularly with respect to the withheld information regarding borrower requirements for rehabilitation, acceptable documentation for the Financial Information Statement, and the requirements for voluntary payments, disclosure "could lead to compliance with, rather than risk circumvention of, the law." *PHE*, 983 F.2d at 252 (citing *Hawkes v. IRS*, 507 F.2d 481, 483 (6th Cir. 1974), where the court ordered disclosure of IRS guidelines determining what tax returns should be audited). If public, the information might well allow borrowers to more efficiently prepare applications for rehabilitation and resolve defaulted loans without unnecessary delays due to paperwork problems. To the extent that ED is responsible for

---

[14] Although the regulations are public, the disclosure of the withheld information remains important because it will inform the public's understanding of how ED communicates these requirements to the PCAs. Disclosure will therefore fulfill FOIA's fundamental purpose "to assist citizens in discovering 'what their government is up to.'" *Long v. U.S. Dep't of Justice*, 450 F. Supp. 2d 42, 52−53 (D.D.C. 2006) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

collecting defaulted debt, revealing this information would help it meet its legal obligations, and it cannot be properly withheld under Exemption 7(E).[15]

## II.     ED Has Failed to Demonstrate that it Properly Withholds Material Pursuant to Exemption 5.

FOIA Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Here, ED argues that the deliberative process privilege and the attorney work product privilege incorporated into Exemption 5 allow it to deny access to portions of certain records. ED's conclusory declaration and deficient Vaughn Index do not meet its burden to demonstrate the applicability of either claimed privilege. *Stalcup v. CIA*, 768 F.3d 65, 70 (1st Cir. 2014).

### A.  ED Improperly Invokes the Deliberative Process Exemption.

Exemption 5 incorporates "the generally recognized privilege for confidential intra-agency advisory opinions, disclosure of which would be injurious to the consultative functions of government." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975) (internal citations and internal marks omitted). In order to properly invoke this deliberative process exemption, the agency must show that that the withheld inter- or intra-agency memorandum is *both* predecisional *and* deliberative. *Stalcup*, 768 F.3d at 70 (citing *Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 557 (1st Cir. 1992)). ED fails to demonstrate either.

---

[15] In this way, the material is fundamentally distinguishable from that withheld in *Bagwell v. U.S. Dep't of Educ.*, 183 F. Supp. 3d 109 (D.D.C. 2016). There, the court held that disclosing search terms used to uncover wrongdoing would pose a reasonable risk of circumvention of the law. *Id.* at 133. In dicta, the court also noted that disclosing documents that would reveal ED's methods for detecting invalid submissions would pose a similar risk. *Id.* at 125. Here, however, the withheld documents address *complying* with the relevant law, not the detection of wrongdoing. Such information cannot properly be withheld under Exemption 7(E).

1.  <u>ED  has not shown that the material is predecisional.</u>

In order for a record to be "predecisional," the agency must (1) verify that the document temporally precedes the decision to which it relates, (2) "pinpoint the specific agency decision to which the document correlates," and (3) "establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision." *Providence Journal Co*., 981 F.2d at 557 (citations and internal marks omitted). ED's submission does not make this showing with anything approaching the required specificity. *See, e.g.*, Pedersen Dec. ¶¶ 48−50; Vaughn 1−2, 7−9.

Examination of one document redacted pursuant to the deliberative process exemption highlights the problem. ED heavily redacted the Corrective Action Plan (CAP) created in response to a July 2014 Final Audit Report issued by the agency's Inspector General. ED 1−5. By way of justification, the Vaughn Index only states, "Document detailing recommended actions planned to be taken by the agency in response to report findings." Vaughn 1. Not only is this brief sentence insufficient to support withholding, but it is demonstrably inaccurate. As a matter of simple chronology, the material is not predecisional. The CAP is dated August 25, 2015, yet the agency withholds material from recommendations and action items even where those items are explicitly marked in the document with an "Actual Completion Date" in 2014, the previous year. ED 1−2.[16] Indeed, the CAP describes which agency official is charged with effectuating the various recommendations, suggesting once again that these decisions had already been made. ED 1−5 (noting for each recommendation a "Responsible Manager").

---

[16] Plaintiffs cannot be certain that this statement applies to *all* of the withheld material in the CAP, because the agency has also withheld some planned, revised, and actual "completion dates" claiming deliberative process. It is particularly difficult to imagine how disclosure of these dates "would be injurious to consultative functions of government," *Sears, Roebuck*, 421 U.S. at 149 (citations and internal marks omitted), and the Vaughn Index provides no specific information that would help. However, the document's heading gives a "Resolved Date" of September 9, 2014 that applies to the document as a whole, suggesting that all of the decisions were final by the August 2015 date on the CAP.

It does not, then detail "recommended actions planned to be taken."

Even if some redacted portions of the CAP were initially drafted before the agency made a final decision on its response to the Inspector General's report, those portions had been adopted by the agency by August 2015. Predecisional material "can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *see also N. Dartmouth Properties, Inc. v. U.S. Dep't of Hous. & Urban Dev*., 984 F. Supp. 65, 69 (D. Mass. 1997) (citing *Sears, Roebuck & Co.*, 421 U.S. at 161). Accordingly, no part of the CAP can properly be withheld.

ED's other assertions of the deliberative process privilege are similarly deficient. The agency's application of this exemption is so vague and broad that it threatens to swallow FOIA's public disclosure purpose entirely. The agency invokes deliberative process to withhold material in a series of emails among ED officials and NCLC advocates discussing NCLC's specific questions about the collection policies and practices that impact its student borrower clients. The Vaughn Index entries for these withholdings identify as the sole justification that the documents in question that they "discuss[ ] proposed language and communications related to PCA collection fees." Vaughn 7–9. Seventeen separate entries in the Vaughn Index use precisely the same language; the agency invokes it identically both for documents discussing particular borrowers' cases and claims and for those "analyzing the Department's collection methods as applied by PCAs and developing Frequently Asked Questions related to collection fees." Pedersen Dec. ¶¶ 49–50. This blanket invocation of privilege neither pinpoints a specific decision, establishes that any document was prepared to assist an official in making a decision, nor verifies that the document temporally precedes the decision. *See also* ED 152–227; Pedersen

Dec. ¶ 49; Vaughn 2 (providing as sole deliberative process justification "information used

inform [sic] the creation of future Department and FSA policies"). However, under *Providence*

*Journal*, ED cannot merely gesture at the relevance of a document to an amorphous

decisionmaking process to invoke the deliberative process privilege.

> 2.   ED has failed to demonstrate that the material is deliberative.

ED also fails to demonstrate that the material withheld qualifies as deliberative. Material

is deliberative if it "(i) formed an essential link in a specified consultative process, (ii) 'reflect[s]

the personal opinions of the writer rather than the policy of the agency,' and (iii) if released,

would 'inaccurately reflect or prematurely disclose the views of the agency.'" *Providence*

*Journal Co*., 981 F.2d at 559 (quoting *National Wildlife Fed'n v. Forest Serv*., 861 F.2d 1114,

1118−19 (9th Cir. 1988)).

ED has not met this standard with respect to the CAP, the title and structure of which

makes clear that it constitutes the agency's formal and final response to the Inspector General's

report, rather than personal opinions of the writer. ED also fails to meet this standard with

respect to the remaining documents. *See, e.g.*, ED 2849, 2852−53, 2892. It is not self-evident that

material contained in emails responding to inquiries about agency policy reflects personal

opinion rather than agency policy, or that it formed an essential link in any consultative process

at all, much less one relating to a specified decision. Because it is the government's burden to

establish the applicability of the exemption, in the face of this ambiguity, this Court should grant

summary judgment to Plaintiffs or order the agency to supplement its submission.

> 3.   ED has withheld documents that constitute its working law.

Finally, even documents that are both predecisional and deliberative may fall outside the

deliberative process exemption where they constitute the agency's "working law." *Brennan Ctr.*

*for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 194–95 (2d Cir. 2012). In *Sears*, the Supreme Court held that Exemption 5 "calls for disclosure of all opinions and interpretations which embody the agency's effective law and policy," that is, its "working law," because the public is "vitally concerned with the reasons that did supply the basis for an agency policy actually adopted." *Sears, Roebuck*, 421 U.S. at 152–53 (citations and internal marks omitted); *see also Com. of Mass., by Dep't of Pub. Welfare v. U.S. Dep't of Health & Human Servs.*, 727 F. Supp. 35, 43 n. 11 (D. Mass. 1989) ("'Secret law' is neither legitimate nor covered by" deliberative process privilege).

A number of the redactions in agency emails appear to withhold precisely such effective law and policy. For example, in one document, the agency has withheld the response to the advocate's question, "How would someone know which collection fees are new and which are from a prior waived amount?" ED 2849, 2852–53. In another, it withheld all answers to the advocate's questions, including, "How is the rehabilitation payment amount determined for borrowers using the income and expense form?" and "Are servicers required to continue collecting from incarcerated borrowers?" ED 2892. It seems likely that knowledgeable agency officials' discussion of these and similar questions would constitute the agency's effective policy. ED's blanket invocation of the exemption does not provide any explanation specific to particular withholdings that could dispel this intuition.[17]

**B.  ED Improperly Invokes the Work Product Exemption.**

The agency claims that some material is exempt from disclosure pursuant to the attorney work product privilege as incorporated into Exemption 5. In the context of FOIA, documents

---

[17] Although the agency's filing is deficient with respect to its explanation of each and every deliberative process withholding, Plaintiffs recognize that the deliberative process exemption may well apply to the redactions at ED 2858–2872 consisting of comments by an agency official on a draft Frequently Asked Questions document. For purposes of this litigation, Plaintiffs do not contest these redactions.

qualify for the exemption "if, 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation.'" *Maine II*, 298 F.3d at 68 (1st Cir. 2002) (quoting *United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998)). A Vaughn Index can carry the agency's burden with respect to the work product exemption only if it identifies the litigation for which the document was created and "explain[s] why the work-product privilege applies to the relevant portions of the document," *Id.* at 69 (citing *Church of Scientology*, 30 F.3d at 237). Conclusory declarations and a Vaughn Index that "fails to demonstrate that any particular document was prepared for litigation" do not justify the application of the work product exemption. *Id.*

Here, ED has withheld portions of the PCA manual claiming the work product privilege, specifically the sections entitled "Requirements for Litigation Referral," ED 3172, and "Preparing the Litigation Package," ED 3173, as well as various pages containing instructions for preparing a Certificate of Indebtedness, e.g. ED 3179–80, 3183–84. ED's proffered justification is that the redacted material is "guidance for attorneys in advance of litigation." *See* Vaughn 11–12.

The attorney work product cannot apply here, though, because the withheld information was written neither *by* nor *for* an attorney. ED nowhere states that the material in question was drafted by an attorney, and the record makes clear that this material is not "guidance for attorneys" at all. The Manual is clearly directed at the PCAs, not agency attorneys. It is entitled "PCA Procedures Manual *for Private Collection Agencies* contracted by Federal Student Aid," ED 3006 (emphasis added), and the Pedersen Declaration elsewhere states that it (along with other documents) "describes *for the PCAs* the collection tools available to them." Pedersen Dec.

¶ 41 (emphasis added).[18] The PCA Manual's Litigation chapter begins by stating that "the PCA may refer debts to [ED's Federal Student Aid office] for litigation," and the next section, withheld as work product, is entitled "Requirements for Litigation *Referral*." ED 3172 (emphasis added). Based on this description, it follows that the Vaughn Index and declaration are inaccurate in describing portions of the PCA Manual withheld as attorney work product as "guidance for attorneys." They are, instead, instructions to non-attorney PCA employees as to how to gather and provide to ED the factual material that it requires to initiate collection actions. *See also* ED 3226 (withholding as work product contents of section entitled "How to Run Litigation Screen Print Reports").

Even if the manual were written by or for an attorney, the substance of the withheld information would still prevent the application of Exemption 5. ED withholds rote instructions for preparing documents required to commence litigation. Critically, it has nowhere argued that the redacted material contains any legal analysis. ED's brief notes that the work product privilege can apply even when no specific case or claim has been identified, Br. 23–24, a point which is generally true but does not save the agency here. ED's citation to *Schiller v. N.L.R.B.*, 964 F.2d 1205 (D.C. Cir. 1992), does not support its work product claim; there, the court noted that the documents in question "provide[d] instructions on preparing and filing pleadings in [Equal Access to Justice Act] cases, *including arguments and authorities*," *id.* at 1208 (emphasis added). Similarly, ED's citation to *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124 (D.C. Cir. 1987) does not help it. There, D.C. Circuit carefully distinguished between documents "advis[ing] the agency of the types of legal challenges likely to be mounted against a proposed

---

[18] Ms. Pedersen's declaration that "[t]his information contains legal analysis and strategies to support *the Department's attorneys'* handling of AWG hearings and prosecution of collection actions" is therefore disproven by her own words. Pedersen Dec. ¶ 51.

program," which could properly be withheld as attorney work product, and those that were "like an agency manual," in which attorneys elaborate on the meaning of existing statutes, which did not constitute work product, *id.* at 127. If agency attorneys' description of the law is not subject to withholding as work product, than surely neither are instructions for compiling legal paperwork.

### III.  ED Improperly Withheld 131 pages in Full Under Exemption 3.

ED asserts that the Procurement Integrity Act (PIA) justifies withholding 131 pages in full under Exemption 3. Br. 18–20; Pedersen Dec. ¶¶ 43–46; Vaughn 7. But even if PIA qualifies as an Exemption 3 statute,[19] ED has not established that it protects all of the withheld information.

#### A.  Exemption 3 Only Applies to Information that is Included Within the Protection of a Qualifying Statute.

Exemption 3 covers information "specifically exempted from disclosure by [a] statute" that either "requires that the matter be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A)–(B). The exemption turns on two questions: whether (1) the cited provision is a statutory exemption to disclosure, and (2) the withheld information is "included within the statute's protection." *See Maynard v. CIA*, 986 F.2d 547, 554 (1st Cir. 1993). "[A]gency decisions to withhold materials under Exemption 3 are entitled to some deference," but *only after* the Court has affirmatively answered both of these

---

[19] Within the context of a discovery dispute, the Federal Court of Claims highlighted that PIA "prohibits not *all* disclosure[s] of procurement-related information, but rather, disclosure *other than as provided by law*." *Pikes Peak Family Housing, LLC v. United States*, 40 Fed. Cl. 673, 680 (1998) (emphasis in original) (internal quotation marks omitted). It went on to explain that PIA only prohibited secret leaks and not disclosures through discovery or other lawful means. *Id.* Applying this logic, PIA would not prevent disclosures via Freedom of Information Act requests, which are "provided by law." *See also* 41 U.S.C. § 2107(7) (stating that PIA does not "limit the applicability of a requirement, sanction, contract penalty, or remedy established under another law or regulation"). For the purposes of this brief, Plaintiffs assume for the sake of argument that PIA is an Exemption 3 statute.

questions under de novo review. *Church of Scientology*, 30 F.3d at 235. The agency must

support its claim that the withheld information falls within the relevant statute's protection

through "reasonably detailed" and "sufficiently specific" explanations. *Id.* at 233.[20] Finally, even

if some of the withheld information falls within Exemption 3, the Court must determine whether

any reasonably segregable portion of the withheld document could still be produced. *Church of*

*Scientology*, 30 F.3d at 235 n. 15.

### B.   ED Fails to Establish that PIA Applies to All 131 Pages of Information Withheld Under Exemption 3.

Here, ED relies on PIA to trigger Exemption 3. "Except as provided by law," PIA

prohibits the disclosure of "contractor bid or proposal information or source selection

information before the award of a Federal agency procurement contract to which the information

relates." 41 U.S.C. § 2102(a)(1). The statute strictly limits the meaning of "source selection

information" to ten types of previously undisclosed information "prepared for use by a Federal

agency to evaluate a bid or proposal to enter into a Federal agency procurement contract." 41

U.S.C. § 2101(7).[21] To properly invoke Exemption 3, ED needs to indicate how the withheld

information constitutes one of these ten types of source selection information. *Cf. Church of*

*Scientology,* 30 F.3d at 235−36; *see also Legal & Safety Empl. Research Inc. v. U.S. Dep't of the*

*Army*, No. S001748, 2011 WL 34098652, at *4 (E.D. Cal. 2001). It fails to do so here.

The Vaughn Index and Pedersen Declaration baldly state that the withheld information is

"source selection material[]" without ever identifying the applicable statutorily-defined category.

---

[20] Thus, ED's assertion that "the applicability of Exemption 3 pertains to the statute selected, as opposed to the particular documents or records requested by a plaintiff" is only partially correct. Br. 19. While the applicability of Exemption 3 may "depend[] less on the detailed factual contents of specific documents" than other exemptions, *Amnesty Int'l USA v CIA*, 728 F. Supp. 2d 479, 501 (S.D.N.Y. 2010),  the contents of the withheld information is still necessary to the court's analysis of whether the materials falls within the cited statute's coverage.

[21] Although not at issue here, the statute also narrowly defines "contractor bid or proposal information." 41 U.S.C. § 2101(2).

Vaughn 7; Pedersen Dec. ¶¶ 43–46. Indeed, ED's sparse language fails to describe *what* is being withheld, let alone *how* it constitutes source selection information. The Vaughn Index parrots the statutory language, describing the withheld information simply as "source selection materials for PCA contracts." Vaughn 7. The Pedersen Declaration provides little additional information. It begins by suggesting that the "Source Selection Materials identified in response to this request include information used in the Department's 2015 determination of contract award extensions for PCAs." Pedersen Dec. ¶ 32. It goes on to state that the 131 pages of withheld material "*relates to* PCA performance information which is included in the Contractor Performance Assessment Reporting System (CPARS)" and "information reported to that system *may be used* to measure the status of industry performance and support continuous process improvement and *may be used* by the Department to determine which contracts shall be awarded extensions." Pedersen Dec. ¶ 45 (emphasis added). These vague descriptions stand in stark contrast to those provided in *Bagwell*, 183 F. Supp. 3d at 125–27, where, in ED's own words, it "satisfied Exemption 3 standards by providing a detailed declaration explaining the material sought[.]" Br. 20.[22]

   "[T]he purpose of the index is not merely to inform the requester of the agency's conclusion that a particular document is exempt from disclosure under one or more of the statutory exemptions, but to afford the requester an opportunity to intelligently advocate release of the withheld documents and to afford the court an opportunity to intelligently judge the contest." *Church of Scientology,* 30 F.3d at 240 (internal citations omitted). ED's cursory

---

[22] Specifically, in *Bagwell*, ED provided the following description of withheld information: "[D]ocuments include three primary categories of records: (1) the University's narrative responses to the Department's findings; (2) police reports, arrest records, disciplinary files, and other documents that are intended to substantiate the claims made in the University's narrative responses; and (3) additional law enforcement reports, student and employee conduct records, and other institutional documents including file reviews and document reconstructions that the University was required to submit as part of its response to the program review report." 183 F. Supp. 3d at 125–26 (internal marks omitted).

descriptions and justifications fall far short of these goals. Given the length of the document withheld, ED's complete silence regarding segregability makes its demonstration particularly problematic. *Id.* at 233. A court "cannot discharge its *de novo* review obligation unless [the department's] explanation is sufficiently specific." *Id.* Because ED's submission fails to meet this standard, this Court should either order disclosure of the material withheld under Exemption 3 or, in the alternative, order ED to supplement its declaration with more detailed descriptions and a consideration of segregability.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that ED's motion for summary judgment be denied and that Plaintiffs' cross-motion for summary judgment be granted, or, in the alternative, that ED be ordered to supplement its submission or to submit the withheld records for in camera review.

Dated: May 16, 2017

Respectfully submitted,

*/s/* Rachel E. Goodman
Rachel E. Goodman
Dennis D. Parker
Sarah A. Hinger
American Civil Liberties Union
    Foundation
125 Broad Street, 18th Fl.
New York, NY 10004
(212) 549-2500
rgoodman@aclu.org

Matthew R. Segal, BBO No. 654489
Rahsaan D. Hall, BBO No. 645369
Jessie J. Rossman, BBO No. 670685
Laura Rótolo, BBO No. 665247

American Civil Liberties Union
    Foundation of Massachusetts
211 Congress Street
Boston, MA 02110
(617) 482-3170 ex. 337
jrossman@aclum.org

Stuart Rossman, BBO No. 430640
Persis S. Yu, BBO No. 685951
National Consumer Law Center
7 Winthrop Square, 4th Floor
Boston, MA 02110
(617) 542-8010
srossman@nclc.org

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Rachel E. Goodman*
Rachel E. Goodman
*Attorney for Plaintiffs*

Dated: May 16, 2017