UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION, INC., AMERICAN CIVIL LIBERTIES UNION, and NATIONAL CONSUMER LAW CENTER, | * * * * * |
| Plaintiffs, | * * |
| v. | Civil Action No. 16-cv-10613-ADB * * |
| UNITED STATES DEPARTMENT OF EDUCATION, | * * * |
| Defendant. | * * |

# MEMORANDUM AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

BURROUGHS, D.J.

Plaintiffs American Civil Liberties Union Foundation, Inc., American Civil Liberties Union, and National Consumer Law Center filed a request under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") in May 2015 seeking the disclosure from Defendant United States Department of Education of certain documents relating to the servicing of student loans. After Defendant disclosed some, but not all, of the documents requested by Plaintiffs, Plaintiffs filed this lawsuit in March 2016 seeking an order directing Defendant to make additional disclosures. [ECF No. 1]. Now before the Court are Defendant's Motion for Summary Judgment [ECF No. 44] and Plaintiffs' Cross-Motion for Summary Judgment [ECF No. 50]. For the reasons set forth below, the motions are denied in part and granted in part.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**[1]

The Office of Federal Student Aid ("FSA") within the Department of Education ("ED")

---
[1] The following facts are drawn from the parties' statements of material facts. [ECF No. 45 at 2–16 and ECF No. 52].

is responsible for a range of functions pertaining to the disbursement, servicing, and collection of student loans. ED contracts with private loan servicers and private collection agencies ("PCAs") to service loans and collect on defaulted loans. Borrowers are entitled to certain benefits, including deferments, forbearances, and options for repayment plans. Additionally, there are programs available after a borrower defaults, such as cancellation due to disability. Servicers and PCAs are responsible for communicating with borrowers about these benefits. ED has developed policies and procedures to enable FSA to conduct oversight of the contractors and PCAs servicing and collecting on loans, including a PCA Procedures Manual that sets forth instructions to the PCAs, such as detailing collection procedures. Plaintiffs seek information concerning ED's oversight of the PCAs.[2]

Plaintiffs' FOIA request sought information about Defendant's relationship with PCAs, policies governing PCAs' debt collection activities, the manner in which PCAs are compensated, and information about Defendant's policies for monitoring the impact of student debt on communities of color, if such policies exist. The complete request is set forth in the Declaration of Ann Marie Pedersen. [ECF No. 49 at 2–6]. Defendant produced documents in December 2015, March 2016, and several times after this lawsuit was filed, beginning in July 2016.

Plaintiffs challenge Defendant's withholding or redaction of several documents, including portions of the PCA Procedures Manual, a draft "Corrective Action Plan," emails sent between agency employees concerning the development of Frequently Asked Questions related to collection fees, emails among agency employees and between agency employees and loan

---

[2] Plaintiffs allocated space in their opening brief and statement of material facts and filed multiple declarations (in particular, the declarations of Persis Yu and most of the accompanying exhibits) detailing their concern with ED's oversight of PCAs and asserting that a lack of oversight has disproportionately impacted communities of color. [ECF No. 51 at 1–4, ECF No. 52 at 16–16, ECF Nos. 53, 60]. While these concerns may be valid, they are not relevant to the issue before this Court, namely, whether Defendant is obligated to disclose certain documents.

servicers concerning how to respond to borrowers' requests for assistance, and portions of the PCA Procedures Manual.

## II. LEGAL STANDARD

FOIA "was intended to expose the operations of federal agencies 'to the light of public scrutiny.'" Carpenter v. U.S. Dep't of Justice, 470 F.3d 434, 437 (1st Cir. 2006) (quoting Dep't of the Air Force v. Rose, 425 U.S. 352, 372 (1976)). The policy underlying FOIA is "one of broad disclosure, and the government must supply any information requested by any individual unless it determines that a specific exemption, narrowly construed, applies.'" N.H. Right to Life v. U.S. Dep't of Health & Human Servs., 778 F.3d 43, 49 (1st Cir. 2015) (quoting Church of Scientology Int'l v. U.S. Dep't of Justice, 30 F.3d 224, 228 (1st Cir. 1994)). "FOIA provides that certain categories of materials are exempted from the general requirements of disclosure," but these nine exemptions "are to be construed narrowly, with any doubts resolved in favor of disclosure." Carpenter, 470 F.3d at 438. "The government bears the burden of proving that withheld materials fall within one of the statutory exemptions, and district courts are required to make de novo determinations as to the validity of the asserted exemptions." Id. (citing 5 U.S.C. § 552(a)(4)(B)) (additional citations omitted). To that end, the government is obligated to provide "a reasonably detailed explanation for its withholdings" in order to "'afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding.'" Church of Scientology, 30 F.3d at 231, 233 (quoting Wiener v. F.B.I., 943 F.2d 972, 977 (9th Cir. 1991)).

FOIA cases are typically decided on motions for summary judgment. Georgacarakos v. FBI, 908 F. Supp. 2d 176, 180 (D.D.C. 2012). A movant is entitled to summary judgment when it shows that there is no genuine dispute as to any material fact and that it is entitled to judgment

3

as a matter of law. Fed. R. Civ. P. 56(a). Where the parties have presented cross-motions for summary judgment, the Court must "evaluate each motion independently and determine 'whether either of the parties deserves judgment as a matter of law on facts that are not disputed.'" Matusevich v. Middlesex Mut. Assur. Co., 782 F.3d 56, 59 (1st Cir. 2015) (quoting Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004)).

## III. DISCUSSION

### A. Exemption 7

Defendant withheld certain material concerning its strategies for debt collection pursuant to FOIA Exemption 7, which allows the government to withhold "records or information compiled for law enforcement purposes" where, inter alia, the records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7). The information at issue here includes portions of the PCA Procedures Manual that provide guidelines for collecting on a defaulted debt, including information about consolidation, wage garnishment, and rehabilitation agreements, as well as an agreement between ED and the Department of the Treasury regarding Treasury Offset Procedures, which sets forth guidance on how the two agencies collect on student loan debt.

FOIA does not provide a definition of "law enforcement purposes," and few cases have grappled with the meaning of that phrase in a context similar to the present case. Defendant argues that because it is required by statute to attempt to collect on student loan debt, it is engaged in law enforcement activity when it does so. See 31 U.S.C. § 3711(a)(1) ("The head of an executive . . . agency . . . shall try to collect a claim of the United States Government for

money or property arising out of the activities of, or referred to, the agency . . . ."). Plaintiffs respond that because borrowers' repayment obligations arise from a contract, and not from a statute or administrative law, the violation of the terms of the contract is not a violation of the law, and the collection of the debt is not a law enforcement activity.

This question arose in a New York federal district court case in which another advocacy organization requested from Defendant essentially the same documentation at issue here. That court determined that the PCA Procedures Manual did not qualify as a "law enforcement" document because "[t]he term 'law enforcement' pertains to the prevention and punishment of violations *of the law*," and the agency was seeking "to prevent violations of the terms of student loan contracts, not violations of the law." N.Y. Legal Assistance Grp., Inc. v. U.S. Dep't of Educ., No. 15 CIV. 3818 (LGS), 2017 WL 2973976, at *9 (S.D.N.Y. July 12, 2017). Furthermore, the court reasoned, ED could not "prove that disclosure 'could reasonably be expected to risk circumvention of the law,' because the borrowers would not be circumventing the law—they would be circumventing the terms of their contract." Id. (quoting 5 U.S.C. § 552(b)(7)(E)). The Court concurs with this reasoning. "The term 'law enforcement' in Exemption 7 refers to the act of enforcing the law, both civil and criminal." Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico, 740 F.3d 195, 203 (D.C. Cir. 2014) (citing *Black's Law Dictionary* 964 (9th ed. 2009) as "defining 'law enforcement' as the 'detection and punishment of violations of the law'") (additional citation omitted). When a borrower defaults on a student loan, he or she has not violated the law, and is not subject to criminal or civil sanctions. Thus, Defendant's debt collection activities fall outside the scope of "law enforcement purposes" protected by Exemption 7, and Plaintiffs are entitled to summary judgment on this issue.

### B. Exemption 5

Plaintiffs also challenge Defendant's invocation of Exemption 5 to withhold portions of inter-agency emails, a draft of a plan to remedy deficiencies identified in an internal audit, and an internal litigation manual. Exemption 5 protects from disclosure "[a]gency documents which would not be obtainable by a private litigant in an action against the agency under normal discovery rules (e.g., attorney-client, work-product, executive privilege)." Providence Journal Co. v. U.S. Dep't of Army, 981 F.2d 552, 557 (1st Cir. 1992). "Exemption 5 applies 'to documents that are predecisional and deliberative, meaning they reflect advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" N.H. Right to Life, 778 F.3d at 52 (quoting Elec. Frontier Found. v. U.S. Dep't of Justice, 739 F.3d 1, 7 (D.C. Cir. 2014)). Exemption 5 "facilitates government decision making by: (1) assuring subordinates will feel free to provide uninhibited opinions, (2) protecting against premature disclosure of proposed government policies, and (3) preventing confusion among the public that may result from releasing various rationales for agency action." Id.

Here, Defendant contends that the emails and draft plan are protected by the deliberative process privilege, and that the litigation manual is protected by the attorney work product privilege.

#### 1. Deliberative Process Privilege

To invoke the Exemption 5 deliberative process privilege, Defendant must prove that the documents at issue "were both 'predecisional' and 'deliberative.'" N.H. Right to Life, 778 F.3d at 52 (citing Providence Journal, 981 F.2d at 557). "A document is predecisional if the agency can: '(1) pinpoint the specific agency decision to which the document correlates, (2) establish

that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (3) verify that the document precedes, in temporal sequence, the decision to which it relates.'" Id. at 52–53 (quoting Providence Journal, 981 F.2d at 557). "A predecisional document will qualify as 'deliberative' provided it (i) formed an essential link in a specified consultative process, (ii) 'reflect[s] the personal opinions of the writer rather than the policy of the agency,' and (iii) if released, would 'inaccurately reflect or prematurely disclose the views of the agency.'" Providence Journal, 981 F.2d at 559 (quoting Nat'l Wildlife Fed'n v. U.S. Forest Serv., 861 F.2d 1114, 1118–19 (9th Cir. 1988)).

First, Plaintiffs challenge the partial withholding of a Corrective Action Plan ("CAP") created in response to a July 2014 Final Audit Report issued by ED's Inspector General. The CAP is dated August 25, 2015, but Plaintiffs note that the CAP lists "action items" that reflect "actual completion" dates in 2014. Plaintiffs argue that these "actual completion" dates demonstrate that the redacted material is not predecisional, but instead is a list of final decisions that were made by the agency. In response, Defendant filed the Supplemental Pedersen Declaration, which states that the CAP was drafted "in response to program deficiencies identified in the [Office of the Inspector General ("OIG")] Audit," and that the action items in the CAP and their respective completion dates indicate "proposed evidence of completed tasks that the FSA could provide OIG to support the argument that FSA had completed the required corrective actions." [ECF No. 57-1 at 3]. Thus, the version of the CAP at issue here reflects the subjective opinion of a lower-level staffer as to which items would be most helpful to higher-level officials in formulating the final version of the CAP. Given this context, the Court concludes that action items listed within the draft CAP are predecisional in nature.

Plaintiffs also contend that the redacted portions of the CAP were adopted by the agency

by August 2015, and thus lost their status as predecisional material, citing Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980) for the proposition that predecisional material "can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." Here, however, the predecisional document is a draft of a final agency decision, and thus it cannot lose the predecisional status unless the "agency *expressly* chooses to adopt it or incorporates it by reference in announcing its decision." N. Dartmouth Props., Inc. v. U.S. Dep't of Hous. & Urban Dev., 984 F. Supp. 65, 69 (D. Mass. 1997) (citing NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 161 (1975)); see also Coastal States, 617 F.2d at 866, 868 (explaining that court must ask "whether the document is recommendatory in nature or is a draft of what will become a final document," and noting that where documents are part of a "clear 'process' leading to a final decision on the issue," they are more likely to be "properly characterized as predecisional"). The Supplemental Pedersen Declaration states that the version of the CAP at issue here "was not the final version approved by the [Office of the Inspector General], nor was it memorialized in any decisional documents." [ECF No. 57-1 at 3]. In addition, the preliminary CAP was drafted by a lower-level staffer for the review of more senior personnel, id., which also weighs in favor of its status as a predecisional document. See Coastal States, 617 F.2d at 868 ("a document from a subordinate to a superior official is more likely to be predecisional," while the reverse makes it less likely).

Plaintiffs also object to Defendant's withholding or redaction of a series of emails sent between employees of the agency which pertain to "the development of Frequently Asked Questions for Consumer Advocates and Counselors related to PCA collection fees" and that discuss "proposed language and communications related to PCA collection fees." [ECF No. 45-

3]. First, Plaintiffs argue that Defendant has not demonstrated that this material is deliberative. Defendant asserts that it is not required to identify a specific decision to which the document corresponds, to explain that it was prepared to assist in the decision-making process, or to state that the document temporally precedes the specified decision, but Plaintiffs are correct that under First Circuit precedent, such a showing is precisely what is required. See Providence Journal, 981 F.2d at 557 (document is predecisional if "agency can (i) pinpoint the specific agency decision to which the document correlates, (ii) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision, and (iii) verify that the document precedes, in temporal sequence, the decision to which it relates" (citations and quotation marks omitted)).

Here, Defendant has met the first factor of the test, but has not provided sufficient information to allow the Court to conclude that Defendant has satisfied the second and third factors. The Pedersen Declaration states that the emails pertaining to the development of Frequently Asked Questions ("FAQ") about collection fees "are part of the [agency's] process of creating future collection policies." [ECF No. 49 at 18]. In addition, the declaration states that the emails among agency employees and between agency employees and loan servicers contain "discussions concerning the appropriate response to borrowers' requests for assistance and the processing of particular borrowers' claims," which were "conducted prior to a final decision with respect to a particular borrower issue." Id.[3] Based on this declaration, the Court can conclude

---

[3] The Supplemental Pedersen Declaration [ECF No. 57-1] does not provide any additional information relevant to this determination. In addition, the Court notes that the Pedersen Declaration and the Supplemental Pedersen Declaration contain numerous conclusory statements of law which do not set forth the facts relevant to whether Defendant has properly invoked a FOIA exemption. See, e.g., [ECF No. 57-1 at 4] ("This type of collaboration and discussion is the very heart of the deliberative process privilege, and is both deliberative and pre-decisional by its very nature. They do not, therefore, constitute 'working law.'").

that the emails correlate to a specific agency decision, the creation of a FAQ or an official agency response to a borrower, and can infer the third factor, that the emails precede the decision in temporal sequence. Defendant has fallen short in demonstrating the second factor, however, because it has not proven that the emails were written for the purpose of assisting the agency official responsible for making the final decision. It is possible that the documents were properly withheld and that Defendant could prove its entitlement to invoke the exemption, so the motions for summary judgment as to these documents are denied without prejudice and with leave to renew.

Plaintiffs are also correct that Defendant has not proven that the emails are deliberative. See Providence Journal, 981 F.2d at 559 (predecisional document is "deliberative" where it "(i) formed an essential link in a specified consultative process, (ii) reflect[s] the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency" (internal quotation marks omitted)). The Pedersen Declaration and Supplemental Pedersen Declaration do not clearly indicate that the emails "formed an essential link" in the process of creating a FAQ or responding to a borrower, nor do they state that the emails reflect the writers' personal opinions (though the Supplemental Pedersen Declaration describes the content as "preliminary" [ECF No. 57-1 at 4], this is not the same thing as a personal opinion). The Pedersen Declaration does state that the release of some of the redacted content "might confuse and mislead the public because certain of the redacted information includes reasoning that was not ultimately adopted by the [agency]" [ECF No. 49 at 18], though this leaves open the possibility that some of the content was subsequently adopted as agency policy and thus should not be redacted. Therefore, to be entitled to summary judgment as to the withholding of these emails, Defendant must submit evidence with its renewed summary

judgment motion demonstrating that the withheld documents satisfy all three factors to qualify as "deliberative."

Lastly, Plaintiffs contend that the emails may reflect Defendant's "working law," and thus must be disclosed. A document constitutes an agency's "working law," which falls outside the protection of Exemption 5, when it "is more properly characterized as an 'opinion[ ] [or] interpretation [ ] which embod[ies] the agency's effective law and policy.'" Brennan Ctr. for Justice v. U.S. Dep't of Justice, 697 F.3d 184, 195 (2d Cir. 2012) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 153 (1975)). The Supreme Court has characterized "working law" as being post-decisional—that is, it encompasses "communications made after [a policy] decision [is made] and designed to explain it," in contrast to predecisional communications, which "reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." Sears, 421 U.S. at 152–53. First, as discussed supra, Defendant has not yet made the required showing that the documents are predecisional. Second, it is not apparent that the FAQ or a response to a borrower inquiry would be a new policy or decision, rather than an explanation of existing policies. The Pedersen Declaration states that the development of the FAQ is "part of the Department's process of creating future collection policies" [ECF No. 49 at 18], but it does not elaborate on what potential future collection policies are at issue, how the development of the FAQ relates to these policies, or why the FAQ would set out new policy, rather than clarifying existing policy. Indeed, the nature of a "FAQ" suggests that it would be an explanation of policy that has already been adopted. Next, the Pedersen Declaration asserts that the emails concerning the response to a borrower were "conducted prior to a final decision with respect to a particular borrower issue" [ECF No. 49 at 18], but such a decision would not necessarily reflect the formulation of a new policy, rather than the application

of an existing policy to a particular set of facts. Accordingly, Defendant is not entitled to summary judgment on this issue at this time, but may include additional evidence in a renewed summary judgment motion.

2. <u>Attorney Work Product Privilege</u>

Plaintiffs also challenge Defendant's withholding of portions of the PCA Procedures Manual pursuant to the attorney work product privilege. The attorney work product privilege "protects from disclosure materials prepared by attorneys in anticipation of litigation." <u>Maine v. U.S. Dep't of Interior</u>, 298 F.3d 60, 66 (1st Cir. 2002) (internal quotation marks omitted). "The privilege protects work done by an attorney in anticipation of, or during, litigation from disclosure to the opposing party." <u>Id.</u> The purpose of the privilege is to protect the integrity of the adversary process by "providing a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." <u>Nat'l Ass'n of Criminal Def. Lawyers v. Dep't of Justice Exec. Office for U.S. Attorneys</u>, 844 F.3d 246, 250–51 (D.C. Cir. 2016) (quoting <u>Coastal States Gas Corp. v. Dep't of Energy</u>, 617 F.2d 854, 864 (D.C. Cir. 1980)). When a document is created for more than one purpose, it is still protected by the privilege as long as one of the reasons it was prepared was in anticipation of litigation. <u>Maine</u>, 298 F.3d at 68.

Defendant withheld portions of the May 2016 PCA Procedures Manual that provide guidance to attorneys in advance of initiating litigation to collect on student loan debt. The withheld sections are titled "Requirements for Litigation Referral," "Preparing the Litigation Package," and pages that instruct attorneys as to how to prepare a Certificate of Indebtedness to avoid common challenges made in litigation.

Plaintiffs first argue that the work product privilege does not protect these portions of the manual because Defendant has not demonstrated that the documents were prepared by or for attorneys. The Supplemental Pedersen Declaration—submitted in response to Plaintiffs' opening brief—states that the manual "was prepared at the direction of attorneys in [ED's] Office of the General Counsel to assist in the collection and/or defense of anticipated litigation in collection actions of defaulted borrowers." [ECF No. 57-1 at 3]. There is no requirement that a document must be written by an attorney to be protected by the privilege. Instead, Defendant need only prove that the document was prepared "*under the direction of an attorney* in contemplation of litigation." Church of Scientology, 30 F.3d at 236 (emphasis added); see also United States v. Nobles, 422 U.S. 225, 238–39 (1975) (describing the work-product doctrine as "an intensely practical one, grounded in the realities of litigation in our adversary system," including the reality "that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial," making it "necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself [or herself]").

Plaintiffs also contend that, because the withheld material is "administrative" and does not contain legal analysis, but rather consists of "rote instructions" for preparing documents required for litigation, it is not protected. While it may be true, as Plaintiffs assert, that "administrative" information "concerning such matters as payment of witnesses, papering procedures, sample forms, office organization, and the like" does not fall within the scope of the privilege, see Jordan v. U.S. Dep't of Justice, 591 F.2d 753, 757, 776 (D.C. Cir. 1978), the material at issue here goes beyond these types of administrative matters. These portions of the manual contain "legal analysis and strategies" in preparation for litigation [ECF No. 49 at 18]

13

and set forth a particular method of preparing documents for litigation in anticipation of certain legal challenges [ECF No. 57-1 at 2–3]. For example, some sections of the manual explain which loans should be referred to litigation, and how the litigation materials should be prepared. [ECF No. 54-10 at 5–7]. Thus, the information sheds light on Defendant's litigation strategy, thoughts, and plans for the presentation of evidence. Along these lines, the D.C. Circuit recently determined that a manual prepared by DOJ for criminal prosecutions, which contained "litigation strategies," gave "practical how-to advice . . . about how to handle different scenarios and problems," discussed "the types of challenges prosecutors may encounter in the course of prosecutions and potential responses and approaches," and "contemplate[d] facts that may arise in judicial proceedings and evaluate[d] how a court would likely consider those facts" was protected by the work product privilege. Nat'l Ass'n of Criminal Def. Lawyers, 844 F.3d at 251–52 (internal citations and quotation marks omitted); see also Martin v. Dep't of Justice, 488 F.3d 446, 455 (D.C. Cir. 2007) (internal agency memo that contained "legal analyses of potential claims available" to agency and set forth "facts integral to the legal analyses and discussions of investigation strategy" qualified as attorney work product); Delaney, Migdail & Young, Chartered v. I.R.S., 826 F.2d 124, 127 (D.C. Cir. 1987) (internal agency memos that described "types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome" were protected by work product privilege).[4] Accordingly, Defendant has made a sufficient showing that it properly withheld portions of the

---

[4] Plaintiffs argue for the first time in their reply brief that Defendant is required to segregate material that contains legal analysis (or strategy) from that which does not. It appears that Defendant has done so here. Defendant released portions of the PCA Procedures Manual with redactions that appear to reflect instances in which the manual sets forth litigation strategy or guidance for the preparation of documents in anticipation of litigation. See [ECF No. 54-10 at 5–7] (redacting portions under the headers "Identifying Borrowers Certified for Offset," "Requirements for Litigation Referral," and "Preparing the Litigation Package").

14

PCA Procedures Manual under Exemption 5 based on the work product privilege, and it is entitled to summary judgment on this issue.[5]

## III. CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment [ECF No. 44] is <u>GRANTED</u> in part and <u>DENIED</u> in part, and Plaintiffs' Cross-Motion for Summary Judgment [ECF No. 50] is <u>GRANTED</u> in part and <u>DENIED</u> in part. Plaintiffs are entitled to summary judgment as to the documents withheld pursuant to Exemption 7, and Defendant shall produce those documents. The motions for summary judgment as to the documents withheld under the Exemption 5 deliberative process privilege are denied without prejudice and with leave to renew. Defendant is entitled to summary judgment as to the documents withheld pursuant to the Exemption 5 attorney work product privilege.

**SO ORDERED.**

March 30, 2018  <u>/s/ Allison D. Burroughs</u>
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE

---

[5] In their opening brief, Plaintiffs challenged Defendant's withholding of certain documents pursuant to Exemption 3. Due to changed circumstances, however, Plaintiffs have withdrawn that argument [ECF No. 59 at 12–13], and thus the Court does not address that issue here.